**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF MISSISSIPPI**
**OXFORD DIVISION**

**CHARLES STACY RIMMER,**                                                                 **PETITIONER**

**v.**                                              **CIVIL ACTION NO.:  3:11CV161-MPM-JMV**

**WARDEN JESSIE STREETER, et al.,**                                              **RESPONDENTS**

## MEMORANDUM OPINION AND ORDER

Petitioner Charles Stacy Rimmer, Mississippi prisoner no. 146176, has filed a federal

habeas petition pursuant to 28 U.S.C. § 2254 challenging his State court convictions for sexual

battery and child neglect.  Having considered the submissions of the parties, the State court

record, and the law applicable to Petitioner's claims, the Court finds that the petition should be

denied.

### Background Facts and Procedural History[1]

Petitioner was thirty-six years old in the summer of 2005, when he met P.B.[2] and her

twelve-year-old daughter, S.B.  They met through H.B., S.B.'s twenty-one-year-old sister.

Petitioner became a family friend, and P.B. and S.B. would occasionally clean Petitioner's

apartment.  At trial, the jury heard testimony that Petitioner sometimes paid P.B. for the

housecleaning services with drugs.  P.B. and Petitioner often smoked marijuana together, and

S.B. was allowed to smoke marijuana, as well.  S.B. testified that it was not uncommon for P.B.

---

[1]  The Court's recitation of facts, while not verbatim, is taken primarily from the decision
of the Mississippi Court of Appeals.  *See Rimmer v. State*, 43 So. 3d 1187 (Miss. Ct. App. 2010).

[2]  Throughout this opinion, the names of minors and members of the minor victim's
family are referred to by initials for purposes of anonymity.

to "pass out" after consuming the drugs and alcohol she obtained from Petitioner.

Petitioner and S.B. became close, and Petitioner bought S.B. clothes and school supplies. On one occasion, Petitioner took S.B. to a salon and waited with her for five hours while she received hair and nail services. He also paid the $155 fee for the services. S.B. testified that on Valentine's Day in 2007, Petitioner gave her roses and a "basket full of teddy bears and candy." S.B.'s father, who was divorced from P.B., asked Petitioner why he would send such gifts to his fourteen-year-old daughter. Petitioner claimed he bought the gifts because he was like a second father to S.B.

In March 2007, S.B. accused Petitioner of having sexual contact with her on multiple occasions. She also accused him of providing her and two of her younger friends, S.D. and A.M., with drugs, and of encouraging them to dance provocatively while under the influence of the drugs he had given them. On March 23, 2007, S.B. gave a statement to Deputy Dean Poynor of the Calhoun County Sheriff's Department. S.D. and A.M. gave statements shortly thereafter.

At some time between being arrested and indicted, Petitioner filed a petition for writ of habeas corpus, or, alternatively, to set bail. On September 11, 2007, the circuit court conducted a hearing on the petition. S.D. and S.B. testified during the hearing.

On May 16, 2008, in the Circuit Court of Calhoun County, Mississippi, a grand jury returned a twelve-count indictment against Petitioner. The indictment included two counts of sexual battery of a child under the age of fourteen, three counts of sexual battery of a child at least fourteen years old but under sixteen years old, and seven counts of neglect of a child. Two of the neglect counts charged Petitioner with giving S.B. and then eleven-year-old S.D. the drug often referred to as "ecstacy" and encouraging them to "perform sexual conduct by dancing in

[their underwear] . . . and telling them to kiss and touch each other in th[eir] private area[s]."
Two other counts charged Petitioner with similar conduct regarding S.B. and A.M., who was
then twelve years old. In another charge, Petitioner was accused of giving S.D. a Xanax tablet
and encouraging her to engage in explicit behavior with S.B. Petitioner was also charged with
giving S.B. ecstasy and encouraging her to dance provocatively in her underwear in exchange for
money. Petitioner was also charged with giving A.M. marijuana. Petitioner's trial began on
January 13, 2009. Prior to jury selection, the prosecution moved to dismiss counts eight through
twelve. The motion was granted, and counts eight through twelve were dismissed with prejudice.

At trial, S.B. testified that S.D. walked in and discovered Petitioner performing oral sex
on S.B. in 2005, when she was thirteen years old. S.B. testified that she and Petitioner then had
intercourse once in 2005 and several times in 2006, which contradicted her previous statements
that the oral sex act occurred in November 2006. She testified that Petitioner gave her drugs
before each sex act. She testified that Petitioner would give her and her friends drugs and
alcohol and ask them to dance provocatively for him. A.M. and S.D. testified that Petitioner
would provide them with drugs and alcohol in the summer of 2006, and that they would dance
provocatively for him. S.D. testified that she and S.B. were at Petitioner's home on one occasion
in the summer of 2006, and that she walked in a bedroom to find Petitioner performing oral sex
on S.B.

The defense presented evidence that Petitioner was a good friend of the victim's family
who advised P.B. to stop S.B. from seeing her allegedly abusive boyfriend, and that S.B. became
angry and fabricated the charges against Petitioner in retaliation for his interference in her
relationship. The defense cross-examined the girls extensively regarding inconsistencies in their

statements to law enforcement, their testimonies at the bond hearing, and their testimonies at trial. The defense also presented evidence from two witnesses who testified that they heard S.B. admit that she lied about the charges.

The jury found Petitioner guilty of two of the indicted charges. Petitioner was convicted of sexual battery of a child younger than fourteen years old (Count I) and child neglect (Count VII).[3] Petitioner was sentenced on Count I to thirty years in the custody of the Mississippi Department of Corrections ("MDOC"), with five years suspended. On Count VII, he was sentenced to ten years in MDOC custody, with three years suspended. His sentences were ordered to run concurrently.

Petitioner subsequently filed a motion for a new trial, which was denied. With the assistance of counsel, Petitioner then appealed his convictions and sentences to the Mississippi Supreme Court raising as a sole ground for relief that the evidence was not sufficient to support Petitioner's conviction under Count I. The case was assigned to the Mississippi Court of Appeals, and the court affirmed Petitioner's convictions and sentences on September 14, 2010. *Rimmer v. State*, 43 So. 3d 1187 (Miss. Ct. App. 2010) (Cause No. 2009-KA-01039-COA). Petitioner did not timely seek rehearing of the decision.[4]

---

[3] Count I involved the allegation that Petitioner committed an oral sex act on S.B. between January 2006 and July 2006. (*See, e.g.*, Trial Tr. vol. 2, 271). Count VII involved the allegation that sometime in 2006 before S.B.'s fourteenth birthday, Petitioner gave S.B. the drug ecstasy "to perform sexual conduct by dancing in her bra and panties with [A.M.]." (*See id.* at 275-76).

[4] On or about October 18, 2010, Petitioner filed a *pro se* motion for an extension of time to seek rehearing, but the appellate court denied the motion on the basis that, because the mandate had issued on October 5, 2010, it no longer retained jurisdiction to grant the motion. (*See* ECF No. 14-8, 71, 72).

Petitioner, proceeding *pro se*, then filed an application for leave to proceed in the trial court on a motion for post-conviction relief, raising numerous claims of ineffective assistance of trial counsel.  The Mississippi Supreme Court denied Petitioner's application, finding that Petitioner's "claims that he received constitutionally ineffective assistance of counsel fail to meet both prongs of *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The panel further finds that Rimmer has failed to make a substantial showing of the denial of a state or federal right.  Miss. Code Ann. § 99-39-27(5).  Accordingly, Rimmer's application for post-conviction collateral relief should be denied."  (Answer, Ex. B).

Petitioner filed a petition for writ of habeas corpus in this Court, raising the following grounds for relief, as summarized by the Court:

Ground One.  The evidence was insufficient to support a conviction on Count I, and the trial court should have granted Petitioner's motion for a directed verdict.

Ground Two.  Ineffective assistance of trial counsel for:

A.  Failure to adequately investigate.
B.  Failure to call the victim's mother or Sheriff Gore as witnesses.
C.  Failure to subpoena or interview Channing Clair.
D.  Failure to file a motion to dismiss the charges based on Detective Poynor's actions.
E.  Failure to introduce evidence of Detective Poynor's alleged corruption.
F.  Failure to seek a change of venue.
G.  Failure to file a motion to suppress the statements of the victim and her friend, S.D.
H.  Failure to call the victim's sister at trial.
I.  Failure to call the victim's mother at trial.
J.  Failure to be aware of S.D.'s testimony.
K.  Failure to introduce evidence of an alleged recorded phone call between defense counsel and the victim's mother.
L.  Failure to file a motion to dismiss charges based on the "tender years" exception to the hearsay rule.
M.  Advising Petitioner to decline the State's plea offer.

N.      Cumulative error.

**Legal Standard**

The Court's review of Petitioner's claims is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), because his federal habeas petition was filed after the statute's effective date. *See Lindh v. Murphy*, 521 U.S. 320 (1997). The AEDPA prohibits the grant of federal habeas relief on any claim adjudicated on the merits in state court unless that adjudication (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established United States Supreme Court precedent; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the presented evidence. *See* 28 U.S.C. § 2254(d)(1) & (2); *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007).

A state court's decision is "contrary to" Supreme Court law if (1) "the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases," or (2) "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [its] precedent." *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). The "unreasonable application" clause is reserved for decisions that either fail to identify the correct governing law, or that identify the correct governing law but misapply it to the case. *Id*. at 407-08. Under this standard, a state court's decision will not warrant federal habeas relief unless its application of federal law is both incorrect *and* unreasonable. *Garcia v. Dretke*, 388 F.3d 496, 500 (5th Cir. 2004) (emphasis in original) (citation omitted). A federal habeas court considers only the state court's conclusion when determining whether there has been an unreasonable application of federal law, and not the court's reasoning in reaching the decision. *Neal v. Puckett*, 286 F.3d 230, 246 (5th Cir. 2002).

## Discussion

## Ground I.  Sufficiency of the Evidence

In his first ground for relief, Petitioner argues that the evidence was insufficient to support his conviction for sexual battery.  Respondents argue that the claim is procedurally barred, as Petitioner did not present this claim to the Mississippi Supreme Court and exhaust this claim.

Petitioner raised a challenge to the sufficiency of the evidence in his direct appeal, but he never sought rehearing of the Mississippi Court of Appeals' decision and was, therefore, foreclosed from seeking a writ of certiorari to the Mississippi Supreme Court.  Under Mississippi law, an appellant who is displeased with the decision of the Mississippi Court of Appeals must file a motion for rehearing with that court, and if the result of the rehearing proceeding is dissatisfactory, file a petition for writ of certiorari with the Mississippi Supreme Court to obtain review of the decision of the Court of Appeals.  *See* Miss. R. App. P. 17(b).  Because Petitioner did not file a motion for rehearing, he forfeited his right to discretionary review with the State's highest court.

Because Petitioner did not present these claims to the State's highest court in a procedurally proper manner, he has failed to properly exhaust his State court remedies as is required by 28 U.S.C. § 2254(c).  *See O'Sullivan v. Boerckel*, 526 U.S. 838, 839-40 (1999) (holding that a state prisoner must present his claims to a state supreme court in a petition for discretionary review in order to satisfy the exhaustion requirement).  Moreover, Petitioner chose not to raise this claim in his *pro se* motion for post-conviction collateral relief, so he no longer has an available avenue through which to properly present this claim to the State's highest court.

As such, his claim is procedurally barred. *Finley v. Johnson*, 243 F.3d 215, 220 (5th Cir. 2001) ("If a petitioner fails to exhaust state remedies, but the court to which he would be required to return to meet the exhaustion requirement would now find the claims procedurally barred, then there has been a procedural default for purposes of federal habeas corpus relief."); *Sones v. Hargett*, 61 F.3d 410, 416 (5th Cir. 1995) (holding that when "it is obvious that the unexhausted claim would be procedurally barred in state court, we will forego the needless 'judicial ping-pong' and hold the claim procedurally barred from habeas review").

Therefore, in order to obtain habeas review of his defaulted claim, Petitioner must demonstrate cause for the default and actual prejudice as a result, or that failure to consider the claim would result in a fundamental miscarriage of justice. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). "Cause" in this context is something external to the petitioner that cannot be fairly attributed to him. *Id*. at 753. While attorney error may constitute "cause" in some instances, attorney error that is not constitutionally ineffective will not excuse a procedural default. *Murray v. Carrier*, 477 U.S. 478, 488 (1986). However, Petitioner would have to raise and exhaust a claim of ineffective assistance of appellate counsel for failure to seek discretionary review on direct appeal in order to argue attorney error as cause to overstep the procedural default. *See, e.g., Edwards v. Carpenter*, 529 U.S. 446, 452 (2000). Petitioner has not raised such a claim. Therefore, the alleged ineffective assistance of appellate counsel cannot be relied upon as "cause" to overstep the procedural default as to this issue. Because Petitioner fails to demonstrate cause, the Court need not question whether there is prejudice. *See Martin v. Maxey*, 98 F.3d 844, 849 (5th Cir. 1996).

Neither does Petitioner establish that failure to consider his claim would result in a

fundamental miscarriage of justice. The "fundamental miscarriage of justice" exception is confined to cases of actual innocence where the petitioner shows, as a factual matter, that he did not commit the crime of conviction. *Fairman v. Anderson*, 188 F.3d 635, 644 (5th Cir. 1999) (citation and internal quotation marks omitted). A petitioner claiming this exception must present new, reliable evidence and show that it was "more likely than not that no reasonable juror would have convicted him in light of the new evidence." *Id.* (citation omitted). Petitioner has not identified any new, reliable evidence to support his claim. Accordingly, Petitioner has not demonstrated that a fundamental miscarriage of justice will result if this claim is not considered on its merits.

### Ground II. Ineffective Assistance of Counsel

Petitioner was represented at trial by attorneys David Hill and David Minyard. He raises several claims challenging the adequacy of their defense of him. The Sixth Amendment to the United States Constitution guarantees a criminal defendant the right to the effective assistance of counsel. *See, e.g.,Yarborough v. Gentry*, 540 U.S. 1, 5 (2003). A federal habeas petitioner's claim that he was denied the effective assistance of counsel at trial is generally measured by the two-pronged test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). To prevail on a claim of ineffective assistance of counsel, Petitioner must establish that (1) his trial counsel's performance was so deficient that it cannot be said that he was functioning as "counsel" within the meaning of the Sixth Amendment, and (2) the deficient performance prejudiced his defense. *See id.* at 687; s*ee also Boyle v. Johnson*, 93 F.3d 180, 187 (5th Cir. 1996) (finding that ineffective assistance of counsel claims are analyzed under the *Strickland* framework). A petitioner satisfies *Strickland*'s prejudice prong by demonstrating that "there is a reasonable

probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. The failure to prove either deficient performance by counsel or actual prejudice as a result of counsel's actions or omissions defeats a claim of ineffective assistance. *See id.* at 687; *Green v. Johnson*, 160 F.3d 1029, 1035 (5th Cir. 1998). In a case where the state court has rejected the merits of a petitioner's ineffectiveness claim, the "pivotal question" in a federal habeas proceeding "is whether the state court's application of the *Strickland* standard was unreasonable." *Harrington v. Richter*, ___ U.S. ___, 131 S. Ct. 770, 785 (2011).

### 1. Failure to adequately investigate (Ground II.A and II.J)

Petitioner raises several claims alleging that defense counsel failed to adequately investigate his case. An attorney is charged with investigating and preparing to present "an intelligent and knowledgeable defense." *Caraway v. Beto*, 421 F.2d 636, 637-38 (5th Cir. 1970). An attorney's "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Strickland*, 466 U.S. at 690-91.

### A. Alleged phone conversation between the victim's mother and defense counsel.

Attached to Petitioner's memorandum in support of his petition is a transcript of an alleged telephone call between David Hill and P.B., the victim's mother. (ECF No. 3, 64-76). Petitioner complains that trial counsel failed to present the jury with this evidence, which would have proven that Deputy Poynor, the law enforcement officer investigating S.B.'s claims, was

encouraging witnesses to lie.

In the transcript of the alleged phone conversation between Hill and P.B., P.B. states that she believes Petitioner is innocent and that her daughter is lying. (*Id.* at 64). She maintains that she is afraid to tell Deputy Poynor about her suspicions, because Deputy Poynor put P.B. in jail on several occasions and called her an unfit parent when she earlier suggested to him that S.B. was lying. (*Id.* at 66-67). P.B. maintains that she repeatedly asked S.B. over the previous year whether Petitioner was "messing with her," but that S.B. always denied it prior to March 2007. (*Id.* at 67, 70). P.B. alleges that Petitioner showed P.B. how to check messages on S.B.'s phone, and that S.B. became angry and shortly thereafter accused Petitioner of having sex with her. (*Id.* at 68). P.B. states that she did not know that S.B. had alleged that P.B. was present on every occasion that Petitioner had sex with S.B., but she admits that she frequently passed out from consuming drugs and alcohol. (*Id.* at 68). P.B. states that she called defense counsel because Deputy Poynor was twisting her words to make it sound like she was saying something different, and she alleges that he had her "locked up" approximately five times in the last two months for drunkenness, child endangerment, and possession of marijuana. (*Id.* at 71-72). She states that she is on a variety of medication for asthma and anxiety, and that she had tried to commit suicide because of Deputy Poynor's actions. (*Id.* at 72-73). P.B. maintains that Deputy Poynor wants her to make statements that simply are not true, and Hill and P.B. arrange for P.B. to come to Hill's office to discuss the matter more in person. (*Id.* at 75-76).

The transcript provided by Petitioner has not been authenticated, and he has not provided the Court with adequate information to determine whether a phone call between Hill and P.B. took place. Assuming that such a conversation did occur, the Court finds that the transcript

demonstrates that counsel did investigate the facts of this case.  It demonstrates that defense counsel interviewed the victim's mother and arranged for a follow-up meeting with her at his office.

The Court otherwise notes that defense counsel elicited testimony at trial that presented the jury with information regarding many of the claims allegedly made by P.B. during the telephone conversation.  In Petitioner's case-in-chief, the defense called Bobby Hodge, a former neighbor of both the victim and Petitioner, who testified that the victim had made up the allegations against Petitioner in retaliation for his interference in her relationship with her boyfriend.  (Trial Tr. vol. 6, 459).  Hodge further testified that he heard the victim say that the allegations were false.  (*Id.* at 461).  Sarah Swim, Hodge's live-in girlfriend, corroborated Hodge's testimony.  (*Id.* at 474-77).  Therefore, P.B.'s statements during the phone call that the victim had made false allegations in retaliation for Petitioner's interference in her life were presented to the jury.

Respondents argue, and the Court agrees, that if the transcript is *bona fide*, many of the statements made by P.B. during the phone call would have proven detrimental to Petitioner's case.  P.B. admits that she was most likely passed out from the use of drugs and alcohol when the victim and P.B. were at Petitioner's apartment.  (ECF No. 3, 68).  P.B. states that she asked the victim whether Petitioner was "messing with [her]," which the victim supposedly denied.  (*Id.*).  Had these statements been presented at trial, they would have permitted the State to point out to the jury that the victim's mother had been concerned that there was an inappropriate relationship between Petitioner and the victim.  P.B.'s assertions throughout the transcript that she was afraid of Deputy Poynor because he had arrested her multiple times for drinking, abusing drugs, and

child neglect would most likely have caused more harm than help to Petitioner's defense. It appears to the Court that P.B. was not called as a witness and the transcript of this alleged phone conversation was not introduced as part of her testimony because counsel **did** thoroughly investigate P.B. as a witness.

**B. Alleged inconsistencies in the statements of the adolescent witnesses.**

S.B., S.D., and A.M. each gave statements to law enforcement officials in March 2007 implicating Petitioner in the crimes alleged in the indictment. (*See* Trial Tr. vol. 1, 121-23; 124-25; 128). S.D. and S.B. both testified at Petitioner's bond hearing in September 2007. (*See* Trial Tr. vol. 3, 97-150; Trial Tr. vol. 4, 151-176). All three girls testified at trial. (Trial Tr. vol. 4, 275-300; Trial Tr. vol. 5, 301-379; 405-446). Petitioner maintains that the girls made inconsistent statements about where the alleged criminal acts occurred, how many times they occurred, who was present when they occurred, and when they occurred. For instance, he argues, S.B. gave a statement and testified at the bond hearing that she and Petitioner engaged in sexual activity in November 2006, while she testified at trial that Petitioner performed oral sex on her in the summer of 2005. He notes that S.D. gave inconsistent recollections as to when she witnessed Petitioner performing oral sex on S.B., as she stated at the bond hearing that it was in the summer of 2006, while she testified at trial that it was June 2006. Petitioner alleges that not only were the victims' own statements inconsistent, but that their statements contradicted each other. Petitioner argues that trial counsel did not adequately examine the inconsistencies in the statements of S.B. and her friends.

A recurring theme throughout Petitioner's defense was that the victims' allegations were so inconsistent as to be unbelievable. The girls were thoroughly cross-examined regarding

13

inconsistencies between their earlier statements to police, the testimony at the bond hearing, and the testimony at the trial itself. Petitioner's attorneys constantly reminded the jury of these discrepancies, and defense counsel's closing argument centered around the discrepancies. That the jury ultimately resolved these discrepancies against Petitioner does not render counsel's performance deficient.

### C. Alleged change in S.D.'s testimony.

Petitioner argues that S.D., one of S.B.'s friends, changed her testimony at trial, and that counsel should have been aware of this. Specifically, he claims that S.D. alleged at trial that she had observed Petitioner performing oral sex on the victim in June of 2006, while she earlier gave more general statements that it had been in the summer of 2006. (ECF No. 3, 18).

S.D. testified at Petitioner's bond hearing that she witnessed Petitioner performing oral sex on S.B. in the summer of 2006. (Trial Tr. vol. 3, 114). At trial, S.D. again testified that she had seen Petitioner performing oral sex on S.B. in the summer of 2006, and stated that she was sure it was during the summer because she was baptized the following day. (Trial Tr. vol. 5, 428). When asked what month it was, S.D. replied, "June maybe." (*Id.*).

S.D.'s testimony did not significantly change between the bond hearing and trial. Petitioner's counsel thoroughly cross-examined S.D. regarding inconsistencies between her testimony at trial and at the bond hearing. (*See* Trial Tr. vol. 5, 430-44). Nothing in the record indicates that Petitioner's attorneys were unprepared to cross-examine S.D., or that their cross-examination was deficient.

### D. Allegation that the victim was lying.

Petitioner complains that trial counsel did not move under Mississippi Rule of Evidence

608(a) to introduce character evidence that the victim was lying. Mississippi Rule of Evidence 608(a) provides:

> The credibility of a witness may be attacked or supported by evidence in the form of opinion or reputation, but subject to these limitations: (1) the evidence may refer only to character for truthfulness or untruthfulness, and (2) evidence of truthful character is admissible only after the character of the witness for truthfulness has been attacked by opinion or reputation evidence or otherwise.

Petitioner argues that, at his bond hearing, his attorneys argued that they had witnesses who would testify that the victim and her mother had admitted the allegations were false, but that counsel failed to call the witnesses to testify at trial. (ECF No. 3, 19). However, Petitioner's attorneys called both Bobby Hodge and Sarah Swim who testified that they heard the victim and her mother state that the allegations were false. (Trial Tr. vol. 6, 461, 466-67).

### E. Evidence of past sexual behavior.

Petitioner claims that trial counsel performed ineffectively in failing to offer evidence of S.B.'s past sexual behavior pursuant to Mississippi Rule of Evidence 412, which provides that evidence of a victim's past sexual behavior may be admissible if it is offered to demonstrate that the accused is not the source of "semen, pregnancy, disease, or injury;" that the sex between the victim and the accused was consensual; or that the victim has previously made false allegations of sexual offenses. *See* Miss. R. Evid. 412.

 In this case, there was no physical evidence to dispute. Because the victim was a minor, consent was not an issue. No proof of prior false accusations exists in the record.[5] As such,

---

[5] The Court notes that on the first day of trial, before proceedings in open court were commenced, defense counsel moved for a continuance based on recent receipt of some of S.B.'s records from the Department of Human Services that referenced S.B.'s records from a residential treatment facility. (*See* Trial Tr. vol. 4, 195). Defense counsel noted that there was a statement in the records that S.B. had been sold by her parents to friends in exchange for drugs. (*Id.* at

evidence of the adolescent victim's past prior sexual behavior was inadmissible. During opening statements, trial counsel told the jury that S.B. and her boyfriend "were actually having sex on a regular basis[.]" (Trial Tr. vol. 4, 265). After the prosecution objected, the trial judge stated, "[l]et's move on." (*Id.*). Counsel did not perform deficiently in continuing to attempt to bring evidence of S.B.'s prior sexual conduct before the jury.

The Mississippi Supreme Court's decision rejecting the claims of ineffective assistance addressed above is neither contrary to, nor does it involve an unreasonable application of, clearly established federal law. Petitioner is not entitled to habeas relief on these claims.

## 2. Failure to call certain witnesses (Ground II.B; Ground II.C; Ground II.H; Ground II.I).

Petitioner argues that his attorneys rendered ineffective assistance in failing to call additional witnesses at trial. Specifically, he claims that trial counsel should have called P.B., the victim's mother; H.B., the victim's sister; Sheriff Billy Gore; and Channing Clair, H.B.'s boyfriend. The Court notes that "counsel's decisions regarding examination and presentation of witnesses and testimony. . . fall within [the] category of trial strategy[,] which enjoys a strong presumption of effectiveness." *Pape v. Thaler*, 645 F.3d 281, 291 (5th Cir. 2011). The United

---

196). The prosecution stated that the only "friend" mentioned in the records was Petitioner. (*Id.* at 204-05). Defense counsel argued that the source of the information was unknown, but that if the source was S.B., then the defense was entitled to the statement and to have someone from the treatment facility come and testify as to the statement. (*Id.* at 196-97). The motion was denied, but defense counsel was granted permission to issue a subpoena for Dr. Al Haralson, whose signature was said to appear in the records. (*See id.* at 205; *see also* Trial Tr. vol. 1, 73-74; 77-78).

On cross-examination, defense counsel asked S.B. whether, when she was in a treatment facility, she told anyone there that her parents had sold her to their friends in exchange for drugs. (Trial Tr. vol. 5, 366). When she denied ever making such a statement, defense counsel inquired how such a statement got into her treatment records. (*Id.*). S.B. "shrugged her shoulders." (*Id.*). The statement at issue does not appear in the record, and there is no proof in the record as to who made the statement or whether the statement is indeed false.

States Court of Appeals for the Fifth Circuit has held:

> Complaints of uncalled witnesses are not favored in federal habeas corpus review because allegations of what a witness would have testified are largely speculative. Where the only evidence of a missing witnesses' testimony is from the defendant, this Court views claims of ineffective assistance with great caution.

*Sayre v. Anderson*, 238 F.3d 631, 635-36 (5th Cir. 2001) (internal citation and citations omitted). In order to establish ineffective assistance based on counsel's failure to call a witness, a petitioner is required to "demonstrate that the witness was available to testify and would have done so, set out the content of the witness's proposed testimony, and show that the testimony would have been favorable to a particular defense." *Day v. Quarterman*, 566 F.3d 527, 538 (5th Cir. 2009).

P.B. was subpoenaed but not called as a witness at trial. For the reasons already discussed, namely, that P.B. was an admitted drug addict and alcoholic who provided drugs to her adolescent daughter, defense counsel's decision not to call her to give testimony was not deficient.

Petitioner next complains that H.B., S.B.'s sister, should have been called to testify at trial. He complains that, during the hearing on post-trial motions, David Minyard, one of Petitioner's trial attorney's testified that he had spoken with H.B. prior to trial and was told that her testimony would be that she did not see Petitioner and the victim leave the room together on the night of the oral sex act. (Trial Tr. vol. 7, 681). H.B. has not provided an affidavit stating what she would have testified to, and counsel's statements are hearsay. However, according to S.B., H.B. is a drug addict. As such, she would not have been a particularly credible witness. Additionally, S.D. and S.B. both testified at trial that they sneaked back to Petitioner's house

without H.B. on the night of the oral sex act, and that H.B. was not present at the time the oral sex act occurred.  (*See* Trial Tr. vol. 5, 317-320; 425).  In light of the testimony given by S.B. and S.D. at trial, defense counsel could have made a strategic decision that H.B.'s testimony was unhelpful to the defense.  Petitioner cannot demonstrate prejudice by counsel's choice not to call H.B. to testify.

Petitioner next argues that trial counsel should have called Channing Clair, the boyfriend of H.B., as a witness.  According to Petitioner, Clair's testimony could have proven that the oral sex act "could not have occurred in June of 2006 and Channing Clair could not have been there with the victims [*sic*] sister and others on the night in question."  (ECF No. 3, 28).  Petitioner bases this claim on the fact that Clair was arrested for simple assault on May 30, 2006.  (ECF No. 3, 84).  Petitioner points out that he also was arrested for simple assault on May 30, 2006.  (ECF No. 3, 89).  Petitioner argues that Clair "went on the run" after being charged, but there is no evidence to support that claim.  (ECF No. 3, 29).

The arrests in May do not prove that sexual battery did not occur in June 2006, or that either Petitioner or Clair were jailed as a result of the charges.  There is no affidavit or documentation as to what Clair would have testified if called to the stand.  Petitioner simply claims that an investigation "would have uncovered more."  (ECF No. 3, 29).  Petitioner has failed to demonstrate that Clair would have provided testimony beneficial to his defense.

Finally, Petitioner also claims that trial counsel did not call Sheriff Gore to testify for the defense "after he (Sheriff) would have learned of [P.B.'s] statement."  (ECF No. 3, 26).  This claim appears to be based on a portion of the transcript of the alleged telephone call between defense counsel Hill and P.B., in which P.B. states that she would be willing to talk to Sheriff

18

Gore about her interactions with Deputy Poynor and her belief that the allegations against Petitioner were false. The Court has already determined that trial counsel made a strategic choice not to call P.B. to testify, and there is no evidence that P.B. ever spoke to Sheriff Gore. Petitioner's claim is based on his speculation as to what Sheriff Gore might have testified if he had spoken to P.B. This claim is speculative and does not demonstrate that counsel was constitutionally ineffective in choosing not to call this witness.

The Mississippi Supreme Court's decision that Petitioner's allegations were without merit is neither contrary to, nor does it involve an unreasonable application of, clearly established federal law. Petitioner is not entitled to habeas relief on these claims.

**3. Failure to raise challenges to Detective Poynor (Ground II.D.; Ground II.E.; Ground II.K).**

Petitioner argues that trial counsel should have presented evidence of Deputy Poynor's alleged corruption. Specifically, Petitioner claims that defense counsel should have moved to dismiss the charges against Petitioner based on this alleged corruption, or else presented evidence of the alleged telephone conversation between P.B. and defense counsel Hill.

Once again, assuming that the transcript provided by Petitioner is authentic and accurate, the Court finds that it does not prove corruption on the part of Deputy Poynor. In the transcript, P.B. states that Deputy Poynor, by "rearrang[ing]" her words, tried to get her to make statements about Petitioner that are not true. (ECF No. 3, 73). She states that Deputy Poynor told her she was a bad mother when she accused S.B. of lying. (*Id.*). She also maintains that Deputy Poynor arrested her multiple times for child endangerment, possession of marijuana, and for being drunk. (*Id.* at 72).

There is no credible evidence that Deputy Poynor was corrupt. Deputy Poynor had evidence that P.B. was a drug addict who provided her own minor child with drugs and exposed her to an alleged sexual predator. The fact that Deputy Poynor took steps to protect S.B. from an unsafe environment does not prove that he acted improperly during the course of his investigation.

The decision rejecting Petitioner's argument that trial counsel were ineffective for failing to pursue this line of argument regarding Detective Poynor is neither contrary to, nor does it involve an unreasonable application of, clearly established federal law. Petitioner is denied habeas relief on these claims.

## 4. Failure to seek a change of venue (Ground II.F).

Petitioner complains that trial counsel should have sought a change of venue due to pretrial publicity. In support of his claim, Petitioner has attached photocopies of newspaper articles discussing the charges against Petitioner. (ECF No. 3, 85-88). He has additionally attached a copy of a January 25, 2008, letter sent by one of his attorneys to the "Calhoun County Monitor-Herald" complaining about the articles printed about Petitioner and demanding a retraction be printed. (ECF No. 3, 90-91). In light of these articles, Petitioner asserts that trial counsel was constitutionally ineffective for choosing not to seek a change of venue.

A criminal defendant has the right to be tried by a panel of impartial jurors. *Irvin v. Dowd*, 366 U.S. 717, 722 (1961). The United States Supreme Court has recognized that "[i]t is not required, however, that the jurors be totally ignorant of the facts and issues involved [in a criminal case]." *Id.* Rather, "[i]t is sufficient if the juror can lay aside his impression or opinion and render a verdict based on the evidence presented in court." *Id.* at 723.

The Court agrees with Respondents' argument that the mere fact that counsel wrote a letter to the newspaper more than a year before trial fails to demonstrate that a change of venue was necessary. Additionally, Petitioner has failed to provide any evidence of whether or not the paper printed a redaction as requested by counsel. Petitioner argues that "[t]he community was too small for anyone not to have heard of the case." (ECF No. 3, 31). This claim is speculative; Petitioner has produced no evidence that the jurors in his case were improperly influenced by local newspaper articles. The Court notes that jury voir dire is not included in the trial transcript. (*See* Trial Tr. vol. 4, 212). However, the record of the jury selection process is included in the transcript, and it does not reveal any discussion of jurors who claimed to be influenced by any media coverage. (*See id.* at 212-235).

Petitioner has not demonstrated that any specific juror was improperly influenced by the media coverage of his case. Petitioner has failed to demonstrate that trial counsel were constitutionally ineffective in choosing not to seek a change of venue. Therefore, the decision rejecting Petitioner's claim is neither contrary to, nor does it involve an unreasonable application of, clearly established federal law. Petitioner is denied habeas relief on this claim.

## 5. Failure to challenge the admission of evidence (Ground II.G and Ground II.L).

Petitioner argues that trial counsel were ineffective for failing to move to suppress the statements of S.B. and her friend, S.D., or to move to dismiss the charges under Mississippi Rule of Evidence 803(25), which is the "tender years" exception to the hearsay rule.

Petitioner argues that the girls' statements should have been suppressed "due to inconsistent statements and lies." (ECF No. 1, 8). However, Petitioner does not provide any argument in support of his claim or cite any law under which such a motion would have been

warranted. This claim is conclusory. The Fifth Circuit has held "that conclusory allegations of ineffective assistance of counsel do not raise a constitutional issue in a federal habeas proceeding." *Miller v. Johnson*, 200 F.3d 274, 282 (5th Cir. 2000).

Petitioner also argues that the statements of Deputy Poynor and social worker, Natalie Bryant, were inadmissible hearsay pursuant to Mississippi Rule of Evidence 803(25), which is the "tender years" exception to the hearsay rule. Mississippi Rule of Evidence 803(25) provides:

> A statement made by a child of tender years describing any act of sexual contact performed with or on the child by another is admissible in evidence if: (a) the court finds, in a hearing conducted outside the presence of the jury, that the time, content, and circumstances of the statement provide substantial indicia of reliability; and (b) the child either (1) testifies at the proceedings; or (2) is unavailable as a witness: provided, that when the child is unavailable as a witness, such statement may be admitted only if there is corroborative evidence of the act.

M.R.E. 803(25).

Petitioner does not specify to which statements of Deputy Poynor and Natalie Bryant he refers. However, during cross-examination of the victim, defense counsel compared S.B.'s previous testimony and her statement to Deputy Poynor with her trial testimony, in an effort to point out inconsistencies. S.B. had previously stated that her sister and her sister's boyfriend were present at Petitioner's home at the time the oral sex act occurred, but she testified at trial they were not. She testified that after they all left Petitioner's home that evening, she and S.D. had sneaked back to Petitioner's residence by themselves, which is when the oral sex act occurred. (Trial Tr. vol. 5, 317-18). When defense counsel asked where S.B. had ever said in writing that she sneaked back to Petitioner's home later the same evening, S.B. indicated that she had given additional statements that had not been produced at trial. (*Id*. at 319-20).

The following day, the prosecution clarified that S.B.'s reference to "additional

statements" referred to statements in the Department of Human Services report created by social

worker, Natalie Bryant. (*Id*. at 381-82). The prosecution argued that defense counsel's

questioning left the jury with the impression that these statements did not exist and asked that the

reports be admitted into evidence. (*Id*.). The prosecution also argued that Deputy Poynor and

Natalie Bryant had interviewed the victim together, and that the statements reflected that they

were made at the same time. (*Id*. at 386). Defense counsel objected to the statement as hearsay,

and the fact that they had only cross-examined S.B. about the handwritten statement she gave to

Deputy Poynor. (*Id*. at 383-90). The judge ultimately held that the redacted statement provided

by S.B. to the Department of Human Services was properly admitted as a prior consistent

statement. (*Id*. at 389).

Mississippi Rule of Evidence 801(d)(1)(B) provides that a statement is not hearsay if it is

a prior statement by a witness that is "consistent with the declarant's testimony and is offered to

rebut an express or implied charge against the declarant of recent fabrication or improper

influence or motive." The statement was admitted, without objection, as Exhibit S-1, and the

jury was given the following cautionary instruction:

> That exhibit will be admitted; and, ladies and gentlemen, this statement that is
> being admitted is not to be considered as to the truth of content of that statement,
> but merely for the purpose of showing that the statement is consistent with the
> testimony of the witness, [S.B.], and for no other reason. That's the only reason
> you will consider that. I want to caution you not to consider as to the truth of the
> content of it, but merely to show a prior consistent statement[.]

(SCR vol. 5, 399-400). The trial judge found that the statement was a prior consistent statement

and was not hearsay under M.R.E. 801(d)(1)(B). Counsel did object to the admission of the

report. Counsel cannot be considered ineffective for choosing not to move to dismiss the charges

based on this ruling, as any such motion would have been found without merit. Attorneys are not required to file meritless motions. *Koch v. Puckett*, 907 F.2d 524, 527 (5th Cir. 1990).

Petitioner has failed to demonstrate that trial counsel were constitutionally ineffective in failing to challenge the admission of evidence. The decision rejecting these claims is neither contrary to, nor does it involve an unreasonable application of, clearly established federal law. Petitioner is denied habeas relief on this claim.

### 6. Failure to properly advise Petitioner regarding plea offer (Ground II.M).

Petitioner argues that his trial attorneys rendered ineffective assistance in advising Petitioner not to accept the State's plea offer. Attached to his petition is his affidavit stating that he was offered a plea of 20 years, suspended, with "5 years to do on paper." (ECF No. 1, 19). He maintains that he wanted to take the plea offer but did not because of his attorney's advice. (*Id.*). Also attached is an affidavit from his mother, Barbara Rimmer, stating that she was present when defense counsel conveyed the plea offer, and that counsel advised Petitioner not to take the plea offer "due to all the inconsistent statements made by the victim and her friend. He also stated that he would have to withdraw as counsel if my son pleaded guilty." (*Id.* at 20).

In questioning Deputy Poynor at Petitioner's sentencing hearing, defense counsel elicited an acknowledgment from Deputy Poynor that just days before trial, the State had offered Petitioner a plea deal that would have recommended a sentence of probation. (Trial Tr. vol. 7, 628). On redirect, Deputy Poynor acknowledged that a plea offer was made in an effort to keep the young victims from having to testify. (*Id.* at 630). On cross-examination, Sheriff Gore stated that he was aware that Petitioner was "offered a probation in this case" the Friday before the trial began. (*Id.* at 633). He agreed that "sometimes the evidence just has to be challenged." (*Id.*).

Defense counsel asked the court to suspend the prison term and place Petitioner on probation. (*Id.* at 643). Trial counsel argued that probation had been offered by the State prior to trial, and that Petitioner should not be punished for "challenging the evidence in this case." (*Id.*).

Petitioner sought and was granted leave to amend his petition in order to cite two United States Supreme Court decisions in support of this claim: *Missouri v. Frye*, 132 S. Ct. 1399 (2012) and *Lafler v. Cooper*, 132 S. Ct. 1376 (2012). Each of these cases involved situations where trial attorneys were found to be ineffective in their representation of their clients regarding plea offers. In *Frye*, the Supreme Court held that an attorney's failure to inform his client of the State's favorable plea offer prior to the plea's expiration renders the attorney's performance deficient under *Strickland*. *Frye*, 132 S. Ct. at 1408. Here, there is no allegation that defense counsel failed to inform Petitioner of the plea offer, and *Frye* is, therefore, not applicable.

In *Lafler*, the defendant rejected the State's plea offer after his attorney convinced him "that the prosecution would be unable to establish his intent to murder [the victim] because she had been shot below the waist." *Lafler*, 132 S. Ct. at 1383. Because the parties agreed that the attorney's advice was wrong, and that his advice was constitutionally deficient, the Supreme Court only considered the issue of prejudice.[6] *Id.* at 1384.

Assuming as true that counsel advised Petitioner to reject the plea deal and challenge the evidence in this case, it was not deficient advice. Petitioner was acquitted on five of the seven

---

[6] The Supreme Court held that where an attorney's ineffective advice leads a defendant to reject a plea offer, a defendant must show that but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court and accepted, and that the conviction and/or sentence under the terms of the plea offer would have been less severe than under the judgment that was actually imposed. *Id.* at 1385 (quotation marks omitted).

charges against him because of his challenge to the evidence. He cannot demonstrate that trial counsel was deficient under *Strickland*, and the thus, the *Lafler* test of prejudice is not applicable. *Id*. at 1385.

Petitioner has failed to demonstrate that trial counsel were constitutionally ineffective in regard to this claim. The decision rejecting Petitioner's claim is neither contrary to, nor does it involve an unreasonable application of, clearly established federal law. Petitioner is denied habeas relief on this claim**.**

**7. Cumulative Error (Ground II.N).**

Petitioner argues that trial counsel's cumulative errors deprived him of the effective assistance of counsel at trial. Cumulative error has been recognized as an independent basis for habeas relief only where "(1) the individual errors involved matters of constitutional dimensions rather than mere violations of state law; (2) the errors were not procedurally defaulted for habeas purposes; and (3) the errors 'so infected the entire trial that the resulting conviction violates due process.'" *Westley v. Johnson*, 83 F.3d 714, 726 (5th Cir. 1996) (citing *Derden v. McNeel*, 978 F.2d 1453, 1454 (5th Cir. 1992)). In evaluating the sufficiency of a cumulative error charge, meritless claims or claims that are not prejudicial cannot be cumulated, regardless of the total number raised. *Id.* Petitioner fails to show that the alleged errors have aggregated to cast doubt upon whether the verdict satisfied due process. The decision rejecting this claim is neither contrary to, nor does it involve an unreasonable application of, clearly established federal law. Petitioner is denied habeas relief on this claim**.**

**Certificate of Appealability**

Petitioner must obtain a certificate of appealability ("COA") before appealing this Court's

decision denying federal habeas relief. 28 U.S.C. § 2253(c)(1). A COA will not issue unless

Petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. §

2253(c)(2). To obtain a COA on any claim rejected on its merits, Petitioner must demonstrate

that "reasonable jurists would find the district court's assessment of the constitutional claims

debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). To obtain a COA on a claim

that has been rejected on procedural grounds, Petitioner must demonstrate "that jurists of reason

would find it debatable whether the petition states a valid claim of the denial of a constitutional

right and that jurists of reason would find it debatable whether the district court was correct in its

procedural ruling." *Id.* Applying these standards, the Court concludes that a COA should be

denied.

### Conclusion

It is hereby ordered that Petitioner's petition for a writ of habeas corpus is **DENIED**,

and that this action is **DISMISSED WITH PREJUDICE**. A certificate of appealability is

**DENIED**. All pending motions are **DISMISSED AS MOOT**. A final judgment in accordance

with this opinion and order will issue today.

**SO ORDERED, THIS** the 7th day of July, 2014.

/s/ Michael P. Mills_____
**MICHAEL P. MILLS**
**U.S. DISTRICT JUDGE**